IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEANNA LEE MILLER, )
)
        Plaintiff, )
)
vs. )   Civil Action No.  12-1728
)
CAROLYN COLVIN, Acting Commissioner )
of Social Security, )
)
        Defendant. )
)

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 7 and 9). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 8 and 10). Plaintiff has filed a Reply Brief. (Docket No. 11). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment (Docket No. 9) and denying Plaintiff's Motion for Summary Judgment. (Docket No. 7).

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. Plaintiff applied for DIB and SSI on or about October 7, 2009 and October 8, 2009. (R. 109-116). In her applications, she alleged that since August 26,

1

2008, she had been disabled due to bipolar disorder. (R. 139). Administrative Law Judge ("ALJ") John Kooser held a hearing on August 9, 2011, at which Plaintiff was represented by counsel. (R. 23-57). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 53-57). In a decision dated September 14, 2011, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 7-22). Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on September 27, 2012, the Appeals Council denied Plaintiff's request for review. (R. 1-4). Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 7 and 9). The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.

1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial

3

gainful activity (step 5).  Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing.  Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.     WHETHER THE ALJ IMPROPERLY DISREGARDED THE MEDICAL OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS**

Plaintiff first argues that the ALJ improperly disregarded three reports that Plaintiff's treating psychiatrists made to the Pennsylvania Department of Public Welfare ("DPW") indicating that she was temporarily disabled for various periods of time.  Pl.'s Br. at 7-8.  Specifically, treating source Patricia Jarrett opined on one form that Plaintiff was temporarily disabled from August 20, 2009 through February 20, 2010.  (R. 278-279).  A treating source from the Irene Stacy Community Health Center opined on similar forms that Plaintiff was temporarily disabled from June 2009 through July 2009 and from February 2010 through August 2010.  (R. 344-345, 347).  Plaintiff argues that these treating source opinions support the conclusion that she is disabled and that the ALJ erroneously failed to provide a sufficient basis for declining to afford those opinions substantial weight.  After careful consideration, I disagree.

The amount of weight accorded to medical opinions is well-established.  Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even controlling weight.  20 C.F.R. §§ 404.927, 416.927(c)(1).  To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record.  See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).  To determine the weight of a treating physician's opinion, the ALJ may consider a number of factors, including consistency, length of treatment, corroborating evidence, and supportability.  20 C.F.R. §§ 404.927, 416.927(c)(1).  As the Court of Appeals for the Third

4

Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009).

Here, contrary to Plaintiff's assertions, the ALJ explained in detail his reasons for declining to give great weight to the DPW forms completed by Plaintiff's treating sources stating that she was "temporarily disabled." In relevant part, the ALJ stated:

> The issue of whether an individual is disabled is for the Commissioner. The determination of weight given to a treating source opinion that an individual is disabled includes consideration of several factors, including the supportability of the opinion, and whether the opinion is consistent with other evidence of record, including the treatment history and the claimant's activities of daily living. The opinions are not supported by objective medical evidence, including fairly normal mental status examinations, and are not consistent with other evidence of record, including the treatment history and the claimant's activities of daily living. They are also not consistent with the opinion of the consultative psychologist Dr. Uran. The disability forms are check-the-box forms, without detailed explanations or specific function-by-function analysis of what the claimant is able to do. For these reasons, more weight is given to the opinion of Dr. Uran, which is more supportable and more consistent with the other evidence of record.

R. 16 (ECF 5-2).

Substantial evidence supports the ALJ's conclusion that Plaintiff's reliance on the DPW "checkbox" forms is misplaced. As an initial matter, the ALJ correctly states that the ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to

decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. §§ 404.1527(d)(1), (3); 416.927(d)(1), (3); Dixon v. Comm'r of Social Security, 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance."). Moreover, as the Court of Appeals for the Third Circuit has recognized, "checkbox" reports such as those at issue in this case are inherently suspect and are "weak evidence at best." See Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993); Grogan v. Comm'r of Social Security, 459 F. App'x 132, 138 n.7 (3d Cir. 2012); see also Gibson v. Astrue, Civ. A. No. 09-1227, 2010 WL 1257456, at *13-*14 (W.D. Pa. Mar. 30, 2010) (ALJ did not err by giving little weight to DPW check-the-box form).

Lastly, as the ALJ adequately explained, the checkbox opinions here are inconsistent with the other substantial evidence of record, including Plaintiff's treating physicians' own findings in their treatment records, other medical evidence, and Plaintiff's activities of daily living. For example, the treating physician records reflect fairly normal findings, indicating, inter alia, that although Plaintiff sometimes had a sad mood or affect, she typically demonstrated a clean appearance, cooperative behavior, normal speech, an organized thought process and no delusions. The same treatment records also indicate that Plaintiff frequently made moderate progress toward her goals. (R. 283-300, 357-364). Other inconsistent medical evidence of record includes the opinion of consultative examiner Dr. Uran. (R. 302-311). After examination, Dr. Uran opined that Plaintiff had no limitation in the ability to understand, remember, and carry out short, simple instructions; slight impairment in the ability to make simple work-related decisions; and moderate impairment in the ability to understand, remember, and carry out detailed instructions. With respect to social functioning, Dr. Uran stated that Plaintiff had slight impairment in the ability to interact appropriately with supervisors, coworkers, and the public, and

respond appropriately to changes in a routine work setting; and slight to moderate impairment in the ability to respond appropriately to work pressures. Dr. Uran's opinion is consistent with the results of her examination of Plaintiff[1] and with the other record evidence; thus, the ALJ did not err in affording more weight to that opinion.[2] Finally, the checkbox opinions are inconsistent with Plaintiff's testimony regarding her activities of daily living, which included, inter alia, helping her mother, who is on disability; washing dishes; cleaning up after herself; driving to doctors' appointments, stores, and her friend's house; working at her cousin's bar as a cook when needed; going out with her family and friends; and using the computer to browse the Internet and Facebook. (R. 17, 28-48).[3]

---

[1] Upon examination, Dr. Uran observed, inter alia, that Plaintiff had normal body movement, cooperative behavior, good eye contact, good hygiene, coherent and spontaneous speech, situationally appropriate mood and affect, normal and relevant thought process, coherent language, no blocking in expression of thought, no indication of tangential thinking or flight of ideas, and no loosening of associations. (R. 302-311). Dr. Uran noted that Plaintiff demonstrated adequate learning ability, higher level abstraction, deduction, conceptualization, and recall. Id. According to Dr. Uran Plaintiff also adequately identified proverbs and similarities and demonstrated appropriate social judgment. Id. She was unable to perform serial subtraction or mental computation of 4x9. Id. Plaintiff reported to Dr. Uran that she was "ok" with certain activities of daily living such as: cleaning, shopping, cooking, using public transportation, and getting along with others; but that she had some issues with authority, coworkers and peers, and was distrustful and avoidant of the general public. Id. at 306-307.

[2] Other inconsistent medical evidence of record noted by the ALJ includes the opinion of state agency psychological consultant Roger Glover, Ph.D. that Plaintiff was capable of meeting the basic mental demands of competitive employment despite some limitations resulting from her impairments; and the observation of consultative examiner Dennis Demby, MD, that Plaintiff had normal orientation, memory, attention, language, and fund of knowledge; normal rate, rhythm, and tone of speech; and appropriate mood and affect. (R. 15, 17, 312-331).

[3] Plaintiff's further reliance on her Global Assessment Functioning ("GAF") scores as evidence of disability is misplaced and does not change my conclusions. ECF No. 8, at 8; ECF No. 11, at 2. Specifically, Plaintiff notes that she received two GAF scores of 50: one in August, 2008, upon discharge from Mercy Behavioral Health; and one in December, 2008, as part of a psychiatric evaluation at the Irene Stacy facility. (R. 300, 245). The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003). A GAF of 41-50 denotes "serious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning." See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000) ("DSM-IV-TR"). As other courts have explained, however, a particular GAF score does not necessarily relate to one's ability to work. See, e.g., Cainglit, 85 F. App'x at 75. Here, there is no record evidence that Plaintiff's physicians assigned Plaintiff the asserted GAF scores because they perceived Plaintiff as impaired in her ability to work. Indeed, neither of the records containing the GAF

For all of these reasons, I find that the ALJ properly weighed the medical evidence of record.

## C.     **WHETHER THE ALJ IMPROPERLY DETERMINED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: no more than simple, routine, repetitive tasks; low-stress work environment defined as involving no complex decision making, few changes in the work place, and no high-volume productivity requirements. (R. 15-17). The ALJ further limited Plaintiff to jobs involving no contact with the public and only infrequent, superficial contact with coworkers, and occasional contact with supervisors. Id. Plaintiff argues that this RFC finding is unsupported by substantial evidence because the ALJ failed to account for Plaintiff's testimony concerning her alleged inability to work on a regular basis, inability to concentrate at work, and inability to relate appropriately to supervisors. (ECF No. 8, at 10-12; ECF No. 11, at 4-5). After careful review of the record, I disagree.

The ALJ is charged with the responsibility of determining credibility. Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981); Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); Irelan v. Barnhart, 243 F. Supp.2d 268, 284 (E.D. Pa.), aff'd, 82 F. App'x 66 (3d Cir. 2003). The ALJ must consider "the entire case record" in determining the credibility of an individual's statement. SSR 96-7p. The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

---

scores evaluates Plaintiff's ability to work in any respect. (R. 300, 245). In addition, Dr. Uran assigned Plaintiff a GAF score of 55 upon examination in February 2010, reflecting only moderate impairment. (R. 305). Considering the record as a whole, the GAF scores do not establish a severe mental impairment. See Cainglit, 85 F. App'x at 75.

statements and the reason for that weight." Id. I must defer to the ALJ's credibility determinations, unless they are not supported by substantial evidence. Smith, 637 F.2d at 972; Baerga, 500 F.2d at 312.

Here, the ALJ acknowledged Plaintiff's testimony about her alleged limitations, but, after consideration of the entire case record, concluded that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with his RFC findings. (R. 15). Considering the record as a whole, I find that the ALJ supported his credibility determination with substantial evidence. Such evidence includes the medical evidence of record such as: the fairly normal mental status examination findings by Plaintiff's treating physicians; the findings of consultative examiner Dr. Uran; the observations of consultative examiner Dennis Demby; and the opinion of state agency psychological consultant Roger Glover, Ph.D. (R. 14-17, citing record evidence).[4] Plaintiff's self-reported activities of daily living also support the ALJ's conclusion. As set forth above, those activities included helping her mother, who is on disability; washing dishes; cleaning up after herself; driving to doctors' appointments, stores, and her friend's house; working at her cousin's bar as a cook when needed; going out with her family and friends; and using the computer to browse the Internet and Facebook. (R. 17, 28-48).

For all of these reasons, I find that substantial evidence supports the ALJ's RFC determination and that Plaintiff's arguments to the contrary are without merit.

**D. WHETHER THE ALJ ERRED IN FAILING TO ADOPT A HYPOTHETICAL THAT ACCURATELY REFLECTS PLAINTIFF'S LIMITATIONS**

Plaintiff argues that the ALJ erred in not accepting the vocational expert's testimony that

---

[4] See supra Section II.B (setting forth the details of this record evidence).

there would be no jobs available for a person who would miss two days of work a month on an ongoing basis; was late for work a majority of the time; and/or would be off-task at least fifteen percent of expected work time due to difficulty maintaining concentration. (R. 55-56). I disagree. An ALJ is only required to accept the responses that accurately reflect a claimant's impairments. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). In this case, the record reveals substantial evidence that the hypothetical questions the ALJ adopted accurately reflected Plaintiff's impairments. (R. 14-18; 53-55). As set forth in the preceding sections, the record evidence does not support the additional limitations Plaintiff contends the ALJ should have included.

Because the ALJ properly considered Plaintiff's limitations supported by the record, I find no error on this issue.

### III.     CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEANNA LEE MILLER, )
)
    Plaintiff, )
)
vs. ) Civil Action No. 12-1728
)
CAROLYN COLVIN, Acting Commissioner )
of Social Security, )
)
    Defendant. )
)

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 13th day of January, 2014, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment (Docket No. 7) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 9) is GRANTED.

                                                BY THE COURT:

                                                /s/ Donetta W. Ambrose
                                                Donetta W. Ambrose
                                                U.S. Senior District Judge